IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>[1] WILLIAM SOTO-ENRIQUEZ,<br>     aka "William Descamisao;"<br>[2] JUAN SOTO RAMIREZ,<br>     aka "Pipo;"<br>[3] EDUARDO ALICEA-TORRES,<br>     aka "Eggy;"<br>[4] RAMON L. FERNANDEZ MALAVE,<br>     aka "Porcel;"<br>[5] CARMELO VEGA-PACHECO,<br>     aka "Popeye;"<br>[6] EUCLIDES CARBONELL-TORRES,<br>     aka "Clibi;"<br>[7] EDWIN FLORES-ENCARNACION,<br>     aka "Lambe;"<br>[8] ARMANDO GARCIA-GARCIA,<br>     aka "Mandy;"<br>[9] LUIS TORRENS-ALICEA,<br>     aka "Pito Salsa;"<br>[10] RENE GONZALEZ-AYALA;<br>[11] JOHN DOE, aka "Yun,"<br>     further described as:<br>     approx. 5'10", approx.<br>     200 lbs., white male,<br>     light brown hair,<br>     dark eyes;<br>[12] JOSE LUIS DE LEON-MAYSONET,<br>[13] JAVIER GONZALEZ-QUIÑONES,<br>     aka "Javier el Zurdo;"<br>[14] WAYNE EALOIS HUGGINS,<br>[15] MIGUEL A. RIVERA-SANTOS,<br>     aka "Guel;"<br>[16] GIOVANNI FELICIANO-<br>     NIEVES;<br>[17] VICTOR NEGRON MALDONADO,<br>     aka "Pitosito;"<br>[18] MIGUEL VEGA-COSME,<br>     aka "Miguel-Bobolon,"<br>[19] MIGUEL VEGA,<br>     aka "Mikey;"<br>[20] JUAN E. CINTRON-<br>     CARABALLO,<br>[21] ALBERTO SANTIAGO-FIGUEROA,<br>     aka "Albert;"<br>Defendants. | I N D I C T M E N T<br><br>Criminal No. 97-76 (DRD)<br><br>Violations:<br><br>Title 21, USC,<br>Section 841(a)(1);<br>  [COUNT 2];<br><br>Title 21, USC, Section 846;<br>  [COUNT 2];<br><br>Title 21, USC, Section 848;<br>  [COUNT 1];<br><br>Title 18, USC, Section 2;<br>  [COUNT 1];<br><br>[TWO COUNTS] |



I N D I C T M E N T
Page 2

THE GRAND JURY CHARGES:

COUNT ONE

From on or about January 1, 1990, and continuing until on or about March 7, 1994, in the District of Puerto Rico and elsewhere, and within the jurisdiction of this Court,

    [1] WILLIAM SOTO-ENRIQUEZ,
        aka "William Descamisao;"

        and

    [2] JUAN SOTO RAMIREZ,
        aka "Pipo;"

the defendants herein, aiding and abetting each other, did, knowingly and intentionally, engage in a continuing criminal enterprise, as this term is defined in Section 848(c), Title 21, United States Code, in that

    [1] WILLIAM SOTO-ENRIQUEZ,
        aka "William Descamisao;"

        and

    [2] JUAN SOTO RAMIREZ,
        aka "Pipo;"

did violate provisions of Title 21, United States Code, subchapter I as alleged in Count Two (2) of this indictment, which count is realleged and incorporated herein by reference as if fully set forth herein, which violations were part of a continuing series of violations of subchapter I, undertaken by

    [1] WILLIAM SOTO-ENRIQUEZ,
        aka "William Descamisao;"

        and

        [2] JUAN SOTO RAMIREZ,
           aka "Pipo;"

in concert with at least five other persons with respect to whom the defendant,

        [1] WILLIAM SOTO-ENRIQUEZ,
           aka "William Descamisao;"

occupied a position as the principal administrator, organizer and leader of the enterprise, and with respect to whom defendant,

        [2] JUAN SOTO RAMIREZ,
           aka "Pipo;"

occupied a position as administrator, organizer, supervisor, and manager, and from which continuing series of violations, the defendants herein obtained substantial income and resources. All in violation of Title 21, United States Code, Section 848(a) and (b) and Title 18, United States Code, Section 2.

COUNT TWO

From on or about January 1, 1990, and continuing until on or about March 7, 1994, in the District of Puerto Rico and elsewhere, and within the jurisdiction of this Court,

        [1] WILLIAM SOTO-ENRIQUEZ,
           aka "William Descamisao;"

        [2] JUAN SOTO RAMIREZ,
           aka "Pipo;"

        [3] EDUARDO ALICEA-TORRES,
           aka "Eggy;"

[4] RAMON L. FERNANDEZ MALAVE,
    aka "Porcel;"

[5] CARMELO VEGA-PACHECO,
    aka "Popeye;"

[6] EUCLIDES CARBONELL-TORRES,
    aka "Clibi;"

[7] EDWIN FLORES-ENCARNACION,
    aka "Lambe;"

[8] ARMANDO GARCIA-GARCIA,
    aka "Mandy;"

[9] LUIS TORRENS-ALICEA,
    aka "Pito Salsa;"

[10] RENE GONZALEZ-AYALA;

[11] JOHN DOE, aka "Yun;"

[12] JOSE LUIS DE LEON-MAYSONET;

[13] JAVIER GONZALEZ-QUIÑONES,
    aka "Javier el Zurdo;"

[14] WAYNE EALOIS HUGGINS;

[15] MIGUEL A. RIVERA-SANTOS,
    aka "Guel;"

[16] GIOVANNI FELICIANO-NIEVES;

[17] VICTOR NEGRON MALDONADO,
    aka "Pitosito;"

[18] MIGUEL VEGA-COSME,
    aka "Miguel-Bobolon;"

[19] MIGUEL VEGA,
    aka "Mikey;"

[20] JUAN E. CINTRON-CARABALLO; and

[21] ALBERTO SANTIAGO-FIGUEROA;
    aka "Albert;"

INDICTMENT
Page 5

the defendants herein, did, knowingly and intentionally, combine, conspire, and agree with each other and with divers other persons to the grand jury known and unknown, to commit an offense against the United States, to wit, to knowingly and intentionally distribute multi-kilogram quantities of controlled substances, that is to say, in excess of five (5) kilograms of Heroin, a Schedule I Narcotic Drug Controlled Substance, in excess of five (5) kilograms of Cocaine, a Schedule II Narcotic Drug Controlled Substance, in excess of five (5) kilograms of Cocaine Base, a Schedule II Narcotic Drug Controlled Substance, and in excess of one hundred (100) kilograms of Marihuana, a Schedule I Controlled Substance, as prohibited by Title 21, United States Code, Section 841(a)(1).

### OBJECT OF THE CONSPIRACY

The object of the conspiracy was to distribute heroin, cocaine, cocaine base (crack cocaine), and marihuana, at different drug points for significant financial gain or profit.

### MANNER AND MEANS USED TO ACCOMPLISH THE CONSPIRACY

The manner and means by which the defendants and co-conspirators would further and accomplish the objects of the conspiracy included the following:

1. It was part of the conspiracy that the defendants and their co-conspirators would purchase multi-kilogram quantities of heroin, cocaine and marihuana at wholesale prices.

INDICTMENT
Page 6

2. It was a further part of the conspiracy that the defendants and co-conspirators would cut, divide and package such multi-kilogram quantities of heroin, cocaine and marihuana in small packages for subsequent sale at drug points.

3. It was a further part of the conspiracy that the defendants and co-conspirators would cook part of the cocaine purchased and create cocaine base (crack cocaine), which was also packaged in small packages for subsequent sale at drug points.

4. It was a further part of the conspiracy that the defendants and their co-conspirators would use residences and other locations in order to store and package the heroin, cocaine and marihuana.

5. It was a further part of the conspiracy that the defendants and co-conspirators would sell packaged quantities of heroin, cocaine, cocaine base (crack cocaine) and marihuana in small quantities to customers at drug points.

6. It was a further part of the conspiracy that the defendants and their co-conspirators would have different roles and would perform different tasks in furtherance of the conspiracy.

### ROLES OF THE MEMBERS OF THE CONSPIRACY

I. <u>Leaders</u>

1. **WILLIAM SOTO-ENRIQUEZ aka "William Descamisao"** was the principal leader and organizer of the drug-trafficking organization described in Counts One and Two. He did lead, organize, control, enforce through the use of violence, and supervise the sales of

INDICTMENT
Page 7

controlled substances at drug points located at the "Barriada Bitumul," Sector Israel, Hato Rey, Puerto Rico. He did direct and supervise numerous subordinates whose principal tasks were: (a) to supply sellers with the drugs to be sold and collect the proceeds derived from their sale at drug points; (b) to package drugs for subsequent sale at drug points; (c) to provide protection to both himself and the illegal narcotics being sold at drug points; and (d) to sell narcotics at drug points. He would also participate in the packaging of the narcotics for distribution at drug points, personally deliver packaged narcotics to his runners and sellers, and, at times, collect proceeds derived from drug sales.

2. **JUAN SOTO RAMIREZ aka "Pipo"** was one of the leaders and supervisors of the drug-trafficking organization described in Counts One and Two. He did lead, enforce through the use of violence, and supervise the sales of controlled substances at drug points located at the "Barriada Bitumul," Sector Israel, Hato Rey, Puerto Rico. He did direct and supervise numerous subordinates whose principal tasks were: (a) to supply sellers with the drugs to be sold and collect the proceeds derived from their sale at drug points; (b) to package drugs for subsequent sale at drug points; (c) to provide protection to both himself and the illegal narcotics being sold at drug points; and (d) to sell narcotics at drug points. He would also participate in the packaging of the narcotics for distribution at drug points, personally deliver

INDICTMENT
Page 8

packaged narcotics to his runners and sellers, and, at times, collect proceeds derived from drug sales.

    b.   <u>Runners</u>

**WILLIAM SOTO-ENRIQUEZ aka "William Descamisao"** would employ runners for the drug-trafficking organization described in Counts One and Two. These runners would receive packaged narcotics from **WILLIAM SOTO-ENRIQUEZ aka "William Descamisao"** and deliver them to the sellers for sale at the drug points and would collect the proceeds derived from sales already completed by the sellers. Runners would be responsible for the status of the inventory of illegal narcotics sold at the drug points and for supervising the operations at a given drug point.

    c.   <u>Triggermen</u>

**WILLIAM SOTO-ENRIQUEZ aka "William Descamisao"** had triggermen who were part of the drug-trafficking organization described in Counts One and Two. These triggermen would possess, carry, use and brandish firearms, as defined in Title 18, <u>United States Code</u>, Section 921(a)(3), using them to provide protection to the leader of the organization as well as to the drug operations of the conspiracy from rival drug-trafficking organizations.

    d.   <u>Drug Sellers</u>

**WILLIAM SOTO-ENRIQUEZ aka "William Descamisao"** would employ drug sellers for the drug-trafficking organization described in Counts One and Two. Drug sellers would sell heroin, cocaine,

INDICTMENT
Page 9

cocaine base (crack cocaine) and marihuana at the "Barriada Bitumul" drug points.

**OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY**

In furtherance of this conspiracy and to effect and accomplish the objects of the same, one or more of the conspirators committed, among others, the following overt acts:

1. At divers times between the times alleged, the defendants and co-conspirators, and others to the grand jury known and unknown, aiding and abetting each other, did possess with intent to distribute and did distribute controlled substances, to wit: heroin, cocaine, cocaine base (crack cocaine) and marihuana which were sold to customers in one or more drug points for substantial financial gain or profit.

2. At divers times between the times alleged, the defendants and co-conspirators, and others to the grand jury known and unknown, aiding and abetting each other, possessed, brandished and used firearms, as defined in Title 18, United States Code, Section 921(a)(3), using them to provide protection for the drug operations of the conspiracy from rival drug-trafficking organizations and to engage in shootings against members of rival drug-trafficking organizations.

3. At divers times between the times alleged, the defendants and co-conspirators, and others to the grand jury known and unknown, aiding and abetting each other, did carjack numerous vehicles which were then used to commit shootings against members

INDICTMENT
Page 10

of rival drug-trafficking organizations operating in other public housing projects.

4. At divers times between the times alleged, the defendants and co-conspirators, and others to the grand jury known and unknown, aiding and abetting each other, stored and hid from view controlled substances, to wit: heroin, cocaine, cocaine base, and marihuana, and/or proceeds from the sales thereof, and/or firearms as that term is defined in Title 18, United States Code, Section 921(a)(3), in order to facilitate the successful screening of these items from those outside of the conspiracy. The concealment of these items therefore, prevented their discovery and simultaneously provided easy access to the controlled substances and the weapons.

5. The grand jury hereby incorporates by reference, Count One of this indictment and designates it as a further overt act of this conspiracy.

All in violation of Title 21, United States Code, Section 846.

TRUE BILL

FOREPERSON

GUILLERMO GIL
United States Attorney

Jorge E. Vega-Pacheco,
Assistant U.S. Attorney
Chief, Criminal Division

Jacabed Rodríguez-Coss
Assistant U.S. Attorney

Dated: April 10, 1997